**UNITED STATES BANKRUPTCY COURT**

**FOR THE DISTRICT OF SOUTH CAROLINA**

| | |
|---|---|
| IN RE: | C/A No. 07-00668-DD |
| | Chapter 7 |
| Jean H. Wilson, | ORDER |
| Debtor(s). | |

This matter comes before the Court upon a Motion to Compel (the "Motion") filed by First Federal Savings & Loan Association of Charleston ("First Federal"). The Motion seeks an order directing Debtor to surrender certain collateral, redeem the collateral, or reaffirm the debts owed to First Federal pursuant to 11 U.S.C. § 521(a)(2).[1] Debtor timely filed an Objection to the Motion to Compel. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157(b) and 1334(a) and (b). Pursuant to Fed. R. Civ. P. 52, made applicable to this proceeding by Fed. R. Bankr. P. 7052, the Court makes the following Findings of Fact and Conclusions of Law:[2]

FINDINGS OF FACT

1. On February 7, 2007, Debtor filed a voluntary petition under Chapter 7 of the United States Bankruptcy Code.

2. In her Schedules, Debtor indicated that she owns a condominium in Surfside Beach, SC, having a value of $80,000.00. She also indicated that the condominium is encumbered by a first mortgage lien held by First Federal in the amount

---

[1] Further references to the United States Bankruptcy Code shall be by section number only.
[2] The Court notes that to the extent any of the following Findings of Fact constitute Conclusions of Law, they are adopted as such, and to the extent any Conclusions of Law constitute Findings of Fact, they are so adopted.

of $19,732.00 and a second mortgage lien held by First Federal in the amount of $15,077.00.

3.  In her original Statement of Intention, Debtor stated that she intended to reaffirm the two mortgage debts owed to First Federal.

4.  By letter dated March 6, 2007, Debtor's counsel notified First Federal that, upon further consideration, Debtor had decided not to reaffirm the two mortgage debts.

5.  On March 30, 2007, First Federal filed the Motion to Compel.

6.  On April 4, 2007, Debtor filed an Amended Statement of Intention, which provides that she intends to retain possession of the condominium and continue making payments and remain current on the two mortgage debts owed to First Federal.

## CONCLUSIONS OF LAW

First Federal seeks the entry of an order directing or compelling Debtor to reaffirm the debts owed to First Federal.[2]  It argues that under § 521(a)(2)(A), Debtor must choose to either redeem or reaffirm the debt if she wishes to retain the property securing that debt.  Section 521(a)(2) provides:

> [I]f an individual debtor's schedule of assets and liabilities includes debts which are secured by property of the estate—
> (A) within thirty days after the date of the filing of a petition under chapter 7 of this title or on or before the date of the meeting of creditors, whichever is earlier, or within such additional time as the court, for cause, within such period fixes, the debtor shall file with the clerk a statement of his intention with respect to the retention or surrender of such property and, *if applicable*, specifying that such property is claimed as exempt, that the debtor intends to redeem such property, or that the debtor intends to reaffirm debts secured by such property.

---

[2] First Federal's motion was originally filed to compel Debtor to reaffirm the debts in accordance with her Statement of Intent.  First Federal does not dispute that Debtor timely amended her Statement of Intention pursuant to Interim Bankruptcy Rule 1009 and Rule 1009(b) to provide that she intends to retain the property and continue making payments; therefore, the Motion to Compel is moot with respect to the issue of whether Debtor failed to comply with her original Statement of Intention.

2

Debtor asserts that she may retain possession of her real property and continue making payments as scheduled under the "ride through" option provided by Belanger v. Home Owners Funding Corp. (In re Belanger), 962 F.2d 345 (4th Cir. 1992). First Federal argues that Belanger only addressed a "ride through" for personal property and was superseded by the enactment of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA").

In Belanger, the Fourth Circuit Court of Appeals analyzed § 521(2)(A) and found that the options of reaffirming, redeeming or surrendering property were not exclusive.[3] In that case, the debtors had indicated on their statement of intention that they intended to retain their mobile home and keep the payments current. Id. at 346. The secured creditor moved to compel the debtors to reaffirm the debt, redeem the collateral, or surrender it, arguing that § 521(2)(A), the previous version of § 521(a)(2), restricted the debtors to these options.[4] The court noted that § 521(2) "merely requires a statement of whether the debtor intends to choose any of those options, *if applicable*." The court construed "if applicable" to mean that the options stated in the statute are not exclusive. Id. at 347. The Fourth Circuit held that a debtor who is not in default may elect to retain the property and make the payments specified in the contract with the creditor. Id. at 347.

The enactment of BAPCPA brought several amendments to the Bankruptcy Code with the potential to affect the "ride through" option. Section 521(2)(A) was

---

[3] The position asserted by the Fourth Circuit in Belanger is shared by four other circuits, and is the majority position. See In re Price, 370 F.3d 362, 379 (3d Cir. 2004); McClellan Federal Credit Union v. Parker (In re Parker), 139 F.3d 668, 673 (9th Cir. 1998); Capital Comm. Fed. Credit Union v. Boodrow (In re Boodrow), 126 F.3d 43, 51 (2d Cir. 1997); Lowry Fed. Credit union v. West, 882 F.2d 1543, 1547 (10th Cir. 1989). All five circuits took the position that the previous version of the statute, § 521(2)(A), was procedural, requiring notice, and thus the debtor could "ride through" on secured debts with court protection if debtor remained current on repayment and other obligations, such as insuring the collateral.

[4] The previous version of the statute, § 521(2)(A), was virtually identical to the current version, § 521(a)(2), with the exception that the statute now provides that a debtor must file a statement of intention regarding property of the estate encumbered by any debt, not just consumer debt.

3

redesignated § 521(a)(2)(A) and the requirement to file a statement of intention was made applicable to all secured debts, not just secured consumer debts. 11 U.S.C. § 521(a)(2)(A); see In re Donald, 343 B.R. 524 (Bankr. E.D.N.C. 2006). Section 521(2)(B) was redesignated § 521(a)(2)(B) and the deadline for a debtor to perform his intention was changed to 30 days after the first date set for the meeting of creditors. The changes to § 521(a)(2)(A) and (B) do not appear to independently affect the "ride through" option.

Three sections amended or added by BAPCPA appear to have been designed to limit a debtor's right to elect the ride-through option as to personal property. Section 521(a)(6) provides that a debtor shall not retain possession of personal property as to which a creditor has an allowed secured claim unless the debtor reaffirms or redeems. 11 U.S.C. § 521(a)(6). Former § 521(2)(C), now § 521(a)(2)(C), was amended to provide that "nothing in subparagraphs (A) and (B) of this paragraph shall alter the debtor's or the trustee's rights with regard to such property under this title, *except as provided in section 362(h).*" 11 U.S.C. § 521(a)(2)(C). Section 362(h) was added by BAPCPA and provides that the automatic stay terminates with respect to personal property when the debtor does not state an intention to reaffirm or redeem, or does not perform such intention within a specified period of time. 11 U.S.C. § 362(h). The plain language of these statutes limits their application to a debtor's rights with regard to personal property. A debtor's rights as to real property appear to be unaffected by the BAPCPA amendments. See In re Bennet, No. 06-80241, slip op. at 1, 2006 WL 1540842 (Bankr. M.D.N.C. May 26, 2006).

4

First Federal argues that Belanger did not address real property, therefore a "ride through" option was never established as to real property. The Court is not convinced that the Belanger opinion limits its application to personal property. In Belanger, the Fourth Circuit analyzed the previous version of § 521(a)(2)(A), which refers to property of the estate and contains no language limiting its application to personal property.

The reasoning underlying Belanger further supports its application to both real property and personal property. The Fourth Circuit discussed the creditor's complaint that allowing the "ride through" and a discharge permits the debtors to retain the collateral without exposing them to personal liability for any deficiency in the event of default and the sale of the collateral for less than the balance due.[5] The court stated: "When a nondefaulting debtor is discharged while retaining the collateral, the principal disadvantage to the creditor is the possibility that the value of the collateral will be less than the balance due on the secured debt. But this is a risk in all installment loans, and presumably the creditor has structured repayment to accommodate it." Belanger, 962 F.2d at 349. The risk of being undersecured is particularly a problem for lienholders with liens secured by personal property, which often rapidly depreciates. This risk would appear to be less pronounced for lienholders with liens secured by real property, as real property does not typically rapidly depreciate. In the instant case, First Federal is substantially oversecured, so there is little, if any, risk that it would not recover the full value of its lien if Debtor were to default in the future by failing to make a payment.

---

[5] A secured creditor's lien against the collateral usually will survive the bankruptcy discharge. See Farrey v. Sanderfoot 500 U.S. 291, 297 (1991); Johnson v. Home State Bank, 501 U.S. 78, 84 (1991); In re Hamlett, 322 F.3d. 342, 348 (4th Cir. 2003). Thus, the creditor would maintain the right to repossess the collateral and sell it, if the debtor failed to make timely payments.

Limiting a debtor to the three choices of surrender, redeem or reaffirm for real property would impair the debtor's ability to obtain a fresh start, which is one of the primary purposes of bankruptcy law. See Local Loan Co. v. Hunt, 292 U.S. 234, 244, 54 S.Ct. 695, 699 (1934). As a practical matter, it is highly unlikely that a person who has filed bankruptcy would be able to redeem real property in one lump sum payment.[6] Thus, under First Federal's proposed interpretation, the only alternative for a debtor who wishes to keep his home would be to reaffirm the debt. The creditor would have to consent to the terms of the reaffirmation agreement, thus the creditor could have an improved bargaining position. Congress intended the reaffirmation agreement to be a voluntary, consensual action. In re Crouch, 104 B.R. 770, 774 (Bankr. S.D.W.Va. 1989)(citing In re Whatley, 16 B.R. 394 (Bankr. N.D. Ohio 1982)). First Federal argues that the overall intent of Congress was to eliminate the "ride through" altogether. The facts of this case demonstrate that eliminating the "ride through" for real property would have overly burdensome consequences for certain debtors. Moreover, the continued existence of the "ride through" option for real property is supported by the plain language of the statute. Surely if Congress intended to force a debtor, who otherwise is current under the contract, to choose between giving up her home or agreeing to the creditor's terms, it would have included specific language in the statute dictating this result. Such an onerous requirement should not arise by implication.

First Federal argues that even if a "ride through" option remains for real property, it could hold debtor in default under a nonmonetary default provision such as an *ipso facto* clause (a clause making bankruptcy an event of default). While the Fourth Circuit

---

[6] Section 722 governs redemption and requires that debtor pay the holder of the lien the amount of the allowed secured claim that is secured by such lien in full at the time of redemption. However, the application of § 722 is limited to tangible personal property.

6

held in <u>Riggs National Bank v. Perry</u>, 729 F.2d 982 (4th Cir. 1984) that an *ipso facto* clause was unenforceable as a matter of law, § 521(d) was added by BAPCPA to preserve the enforceability of these types of clauses. However, the language in § 521(d) refers to such provisions in agreements covered by § 521(a)(6) and § 362(h), which address only personal property liens.[7] Thus, it appears that § 521(d) only preserves the enforceability of *ipso facto* clauses in personal property loans.

For the foregoing reasons, the Court finds that the <u>Belanger</u> case is controlling precedent in the Fourth Circuit and provides for a "ride through" option for real property that was unaffected by the BAPCPA amendments. Thus, Debtor has the right to retain her real property without being required to reaffirm or redeem, so long as she remains current in her payments and complies with any other contractual obligations, such as maintaining insurance on the property. Stay relief otherwise appears improper due the existence of equity as adequate protection. Therefore, it is hereby

ORDERED that First Federal's Motion to Compel is denied.[8]

**AND IT IS SO ORDERED.**

_____
UNITED STATES BANKRUPTCY JUDGE

Columbia, South Carolina
May 30, 2007

---

[7] Section 521(d) also states that "[n]othing in this subsection shall be deemed to justify limiting such a provision in any other circumstance."

[8] Due to the importance of consistency in rendering significant decisions under BAPCPA, all bankruptcy judges in this District have reviewed and concur with this opinion.

7